Approved: _____   9MAG 4222   ORIGINAL
TARA M. LA MORTE
Assistant U.S. Attorney

Before:   THE HONORABLE KEVIN NATHANIEL FOX
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :    **SEALED COMPLAINT**

     - v. -                         :    Violations of
                                         18 U.S.C. §§ 1028A,
                                         1343, 1956, 2314
VALDIN O'DONNELL,                   :    and 2
     a/k/a Valdin Kadric,
                                    :
               Defendant.                COUNTY OF OFFENSE:
                                    :    NEW YORK

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     CHRISTOPHER MCKEOGH, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation and charges as follows:

COUNT ONE
(Interstate Transportation of Stolen Property)

     1.   In or about 2016, in the Southern District of New York and elsewhere, VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, knowingly transported, transmitted, transferred, and caused to be transported, transmitted, and transferred, in interstate and foreign commerce, goods of the value of $5,000 and more, knowing the same to have been stolen, converted, and taken by fraud, to wit, O'DONNELL transported a lithograph stolen from the home of its rightful owner (the "Lithograph"), valued over $5,000, from the State of New Jersey to the State of New York, knowing the same to be stolen.

     (Title 18, United States Code, Sections 2314 and 2.)

COUNT TWO
(Wire Fraud)

2. From at least in or about March 2016 up to and including June 2016, in the Southern District of New York and elsewhere, VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, in order to conceal that the Lithograph was stolen and to induce an individual to purchase the stolen Lithograph, O'DONNELL made false representations concerning the identity of the owner of the Lithograph and his authority to sell the Lithograph, and in connection therewith and in furtherance thereof, O'DONNELL caused an interstate wire transfer of funds to be transmitted.

(Title 18, United States Code, Sections 1343 and 2.)

COUNT THREE
(Aggravated Identity Theft)

3. From at least in or about March 2016, up to and including in or about July 2016, in the Southern District of New York and elsewhere, VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, willfully and knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, O'DONNELL used the personally identifying information of another individual ("Individual-1"), including but not limited to Individual-1's name, driver's license and passport, without Individual-1's knowledge or permission, during and in relation to the wire fraud charged in Count Two of the Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b) and 2.)

COUNT FOUR
(Money Laundering)

4.   From in or about June 2016 to in or about July 2016, in the Southern District of New York and elsewhere, VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct financial transactions which in fact involved the proceeds of specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), to wit, wire fraud in violation of 18 U.S.C. § 1343 and interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, knowing the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, to wit, O'DONNELL made a series of ATM cash withdrawals and fund transfers, involving the proceeds of the offenses charged in Counts One and Two of the Complaint, from a bank account held in the name of Individual-1.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.   I am a Special Agent with the FBI, and have been employed as such for approximately 16 years. I have been assigned to the Major Theft squad since 2014. In connection to my assignment to the Major Theft Squad, I specialize in investigations concerning art theft and art fraud, and have participated in other investigations concerning financial crimes, mail fraud, wire fraud, and money laundering. I have participated in the execution of dozens of search warrants during my time at the FBI. From my examination of reports and records and my conversations with other law enforcement agents and other individuals I am familiar with the facts and circumstances set forth below.

6.   The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including conversations with, and reports prepared by, other law enforcement officers. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned

3

during the course of my investigation. Where the contents of documents and the actions and statements of, and conversations with, others are reported herein, they are reported in sum and substance and in part, unless otherwise indicated.

7. Based on information obtained from the owner of the Lithograph ("Victim-1"),[1] I have learned, among other things, the following:

   a. Victim-1 purchased the Lithograph in approximately 2002 at an auction hosted by an auction house located in Manhattan, New York ("Auction House-1").

   b. Since approximately 2007, Victim-1 displayed the Lithograph at Victim-1's residence, located in New Jersey.

   c. The Lithograph was subsequently stolen and, unbeknownst to Victim-1, replaced by a forgery. Specifically, in or about September 2018, Victim-1 arranged to bring what Victim-1 believed to be the Lithograph back to Auction House-1 to be auctioned. Auction House-1 determined, however, that the item brought back by Victim-1 was not in fact the Lithograph that Auction House-1 had sold to Victim-1 in 2002, but was a forgery. Indeed, the Lithograph itself was around that time being auctioned by a second auction house, also located in Manhattan ("Auction House-2").

   d. From at least in or about 2009 up to in or about 2015, both VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, and Individual-1 lived at Victim-1's residence with Victim-1.

   e. In or about 2015, Individual-1 moved out of Victim-1's residence and began residing elsewhere in New Jersey.

   f. In or about 2017, O'DONNELL moved out of Victim-1's residence. Prior to that time, in or about 2016, Victim-1 learned of an accusation regarding O'DONNELL's use of Individual-1's identity to open accounts at several banks, including a particular bank ("Bank-1") without Individual-1's knowledge or authorization. Victim-1 confronted O'DONNELL regarding that accusation of identity theft, and O'DONNELL in

---

[1] In the course of this investigation, I have had the opportunity to view the Lithograph, which is a color lithograph on paper depicting the image of a bullfight. The paper on which the Lithograph is printed measures approximately four feet by six feet.

4

substance acknowledged that O'DONNELL had used Individual-1's identity for the purpose of opening unauthorized credit cards.

8. Based on my review of publicly available information, I learned that in or about October 2018, the Lithograph had been consigned for sale to Auction House-2, by an individual located in New York, New York ("Consignor-1").

9. Based on information provided by Consignor-1, I learned, among other things, the following:

   a. In or about June 2016, Consignor-1 agreed to purchase the Lithograph from an individual purporting to be Individual-1. Consignor-1 did not know the Lithograph had been stolen. In connection with Consignor-1's purchase of the Lithograph, Consignor-1 was informed that Individual-1 was the owner of the lithograph. Consignor-1 was provided with, among other things, copies of documents appearing to be Individual-1's passport and driver's license, and information concerning a particular bank account ("Bank Account-1") held at Bank-1, which was among the financial institutions related to the prior accusation of identity theft involving VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, and Individual-1's identity. Consignor-1 did not personally meet with anyone claiming to be Individual-1, but communicated via telephone and email about the sale of the Lithograph with a person claiming to represent Individual-1. As I have learned from conversations with Individual-1, however, Individual-1 never offered to sell the Lithograph to Consignor-1 and never engaged in communications with, or directed a representative to engage in communications with, Consignor-1.

   b. In connection with Consignor-1's purchase of the Lithograph, Consignor-1 was also provided with documents entitled "Non-Exclusive Listing Agreement" and "Sales Agreement," both dated June 8, 2016.

   c. The Non-Exclusive Listing Agreement bears signatures purporting to be those of an individual claiming to be a broker for the sale of the Lithograph ("Broker-1"), and Individual-1. According to the Non-Exclusive Listing Agreement, Individual-1 appointed Broker-1 to act as Individual-1's exclusive sales agent for the Lithograph. In fact, as confirmed by Individual-1, Individual-1 never employed Broker-1 and did not execute the Non-Exclusive Listing Agreement.

5

    d. The Sales Agreement bears signatures purporting to be those of Broker-1, Individual-1, and a third individual as witness. According to the Sales Agreement, among other things, Individual-1 purportedly agreed to sell the Lithograph to a company controlled by Consignor-1 in exchange for $45,000, and Consignor-1 agreed to wire the purchase funds to Bank Account-1, for Individual-1 as a purported beneficiary. In fact, as confirmed by Individual-1, Individual-1 did not execute the Sales Agreement for the Lithograph, which Individual-1 neither owned nor possessed.

    e. Based on my review of records provided by Consignor-1, and records provided by a bank ("Bank-2") on or about June 10, 2016, at Consignor-1's direction, approximately $37,000 was wired from Consignor-1's bank account, established at Bank-2 in New York, New York, to Bank Account-1, for the purchase of the Lithograph.

    f. On or about June 8, 2016, Consignor-1 received the Lithograph at Consignor-1's residence in New York, New York.

  10. Based upon my review of financial records provided by Bank-1, I have learned, among other things, the following:

    a. Bank Account-1 was opened by a person using the name of Individual-1 as the account owner on or about March 15, 2016. Bank Account-1 was opened electronically, and Individual-1 is listed as the account holder. A copy of Individual-1's driver's license was submitted to Bank-1 in support of opening Bank Account-1. In fact, as confirmed by Individual-1, Individual-1 did not open Bank Account-1 and did not authorize anyone else to open Bank Account-1.

    b. As of June 9, 2016, the day preceding Consignor-1's payment of approximately $37,000 for the Lithograph, Bank Account-1 contained a balance of $25, no deposits having been made since the account was opened.

    c. Following Consignor-1's payment for the Lithograph, from in or about June 2016 to in or about July 2016, a series of ATM withdrawals and transfers were made from Bank Account-1, including but not limited to the following:

      i. On or about June 20, 2016, two ATM withdrawals

6

    from Bank Account-1 were made from an ATM of a bank headquartered in Germany. Based on my review of records maintained by the Department of Homeland Security, I learned that VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, had traveled from the United States to Germany on or about June 16, 2016, and returned from Germany to the United States on or about June 20, 2016.

  ii. Bank surveillance photographs show that on or about July 3, 2016, O'DONNELL withdrew funds from Bank Account-1 using a Bank-1 ATM machine.[2]

  iii. On or about July 6, 2016, an ATM withdrawal from Bank Account-1 was made from an ATM located in Honolulu, Hawaii. Based on my review of a contract and receipt from a car rental company located in Honolulu, Hawaii (the "Car Rental Company"), I learned that O'DONNELL rented a Porsche from the Car Rental Company on or about July 4, 2016, with a contractual return date of July 11, 2016.

 d. As of July 13, 2016, Bank Account-1 contained a balance of $188.11.

---

[2] The photograph of O'DONNELL withdrawing cash from Bank Account-1 depicts an individual whose appearance matches a photograph of O'DONNELL obtained from the New Jersey Department of Motor Vehicles.

WHEREFORE, deponent prays that an arrest warrant be issued for VALDIN O'DONNELL, a/k/a Valdin Kadric, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

_____
CHRISTOPHER MCKEOGH
Special Agent
Federal Bureau of Investigation

Sworn to before me this
1 day of May, 2019.

_____
THE HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York